Helen REYES, Appellant,

v.

UNITED STATES of America, Appellee.

No. 22164, 22164–A.

United States Court of Appeals Ninth Circuit.

Nov. 3, 1969.

John Allen Montag (argued), Los Angeles, Cal., for appellant.

David P. Curnow (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Robert L. Brosio, Michael J. Lightfoot, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before MERRILL and CARTER, Circuit Judges, and POWELL,* District Judge.

JAMES M. CARTER, Circuit Judge.

Pursuant to 21 U.S.C. § 174, appellant was indicted with David Gonzales on six counts charging the sale and concealment of heroin on July 28, 1966, August 29, 1966 and October 13, 1966. Appellant and Gonzales were tried separately and appellant was acquitted on the two counts relating to the July 28 transaction, but was convicted and sentenced on the four counts relating to the August 29 and October 13 transactions. Appellant appeals.

## FACTS

On July 28, 1966 Agent Sergio Borquez of the Bureau of Narcotics met with an informer. Thereafter, under the observation of Borquez, the informer met with David Gonzales at the corner of Crockett and 83rd Streets in Los Angeles. After the meeting the informer returned to Borquez and told him they would have to return in half an hour because the woman had not arrived with the heroin.

When they returned, Agent Borquez saw the informer again meet with Gonzales, and also saw a woman drive up in a 1961 Chevrolet. The informer came back to Borquez and told him Gonzales

---

* Hon. Charles L. Powell, Chief United States District Judge, Eastern District of Washington, sitting by designation.

had said that the source of supply had arrived. The informer was given $120 in recorded government money. He returned to Gonzales, who had left the 1961 Chevrolet to meet him, at which time the informer gave the money to Gonzales and received two rubber condoms of heroin. Agent Borquez watched Gonzales return to the Chevrolet, at which time the Agent and the informer left the area.

Again, on August 29, 1966, Agent Borquez met with the same informer. With the permission of the informer he listened in on a telephone conversation between the informer and Gonzales in which Gonzales advised that he would have to be taken to meet with the woman. Subsequently Borquez, Gonzales and the informer drove to Ferris Street and Whittier Boulevard in Los Angeles. There Gonzales told Borquez that the woman did not trust him and requested the money in advance. Borquez said he did not want to advance the money for fear that Gonzales might run away. After assuring Borquez that he would stay in view, Gonzales received $420 of recorded government money.

Agent Borquez positioned himself a short distance away from the location where Gonzales was to receive the heroin. Prior to their separating, Gonzales had told Borquez that the woman was on her way. After about a twenty minute wait appellant drove up in the same 1961 Chevrolet seen in the previous transaction. Gonzales went up to the car, leaned in the window and received a small object from appellant. Appellant then left her car and she and Gonzales entered a drug store where Gonzales gave an object to appellant. Gonzales then left the store and returned to Agent Borquez, where he handed Borquez a rubber condom of heroin.

Finally, on October 13, 1966, Borquez, Gonzales and the informer again met and proceeded to Hubbard and McDonnell Streets in East Los Angeles. Once there Gonzales again requested money in advance stating that he was going to the connection's house. Agent Borquez

gave him $240 of recorded government money and Gonzales departed. He walked west on Hubbard and then north on McBride, at all times under the constant surveillance of Agent Caromb Durel. Agent Durel watched Gonzales go behind a residence at 622 McBride. He reappeared some twenty minutes later and ran back to Agent Borquez. Durel joined Borquez and Gonzales, at which time Gonzales had been placed under arrest. Durel was then advised that a narcotics transaction had taken place and that Gonzales had returned with a plastic bag of heroin.

Durel then went to the rear of 622 McBride and knocked at the door of 622½ McBride. A man answered and, in reply to Durel's question, stated that the appellant was in the bedroom. Durel entered the house, found appellant in the bedroom, and placed her under arrest. Appellant subsequently, pursuant to Durel's inquiry, surrendered $220 from her brassiere. The bills turned out to be the recorded money given to Gonzales.

Appellant moved in the trial court for suppression of the money surrendered by her at the time of her arrest, on the ground that such evidence was obtained without probable cause and therefore pursuant to an illegal search and seizure. The motion was denied.

## DISCUSSION

■ Appellant's first contention is that the failure to record or transcribe the grand jury proceeding denied her discovery and a fair trial. Loux v. United States, (9 Cir. 1968) 389 F.2d 911, 916, reviewed the authorities and rejected this contention. Also Jack v. United States, 409 F.2d 522 (9 Cir. 1969).

■ Appellant next speculates as to the basis of the grand jury indictment, arguing that "there can be little doubt" that the government relied upon the presumption in 21 U.S.C. § 174 in presenting its case to the grand jury. She then contends that it was improper for the grand jury to consider such a pre-

sumption, and implies that without the presumption the government did not have sufficient evidence to establish that she had knowledge of the unlawful importation of the heroin.

This contention has no merit. It has been repeatedly stated and well established that an indictment cannot be attacked on the ground that evidence before the grand jury was incompetent or inadequate. Costello v. United States, (1956) 350 U.S. 359, 76 S.Ct. 406, 100 L. Ed. 397; Lawn v. United States, (1958) 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321; Huerta v. United States, (9 Cir. 1963) 322 F.2d 1; Johnson v. United States, (9 Cir. 1968) 404 F.2d 1069; Wood v. United States, (9 Cir. 1968) 405 F.2d 423.

Appellant's third assertion of error is that her warrantless arrest and the seizure of the recorded government money incident thereto was in violation of the Fourth Amendment. This contention can best be considered by separating it into three parts—probable cause for the arrest, legality of the Agent's entry into appellant's house, and legality of the seizure.

With respect to probable cause for the arrest, the Supreme Court in Brinegar v. United States, (1949) 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, stated the rule as follows:

"Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed."

See also United States v. Cleaver, (9 Cir. 1968) 402 F.2d 148, 151. The court in Brinegar went on to say that probable cause dealt with "probabilities" which are not technical but are "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

In the present case, the facts and circumstances within Agent Durel's knowledge and of which he had reasonably trustworthy information prior to the arrest consisted of (1) the fact that appellant's car was involved in, or in close proximity to, each of the three heroin transactions, (2) the fact that appellant had been observed engaging in a heroin transaction with Gonzales on August 29, (3) the fact that Agent Durel had seen a photograph of appellant and had been advised by a fellow agent that she was the woman in the August 29 transaction, (4) the fact that when Gonzales went to obtain heroin on October 13 he went behind a residence on McBride Street where appellant's car was parked in the driveway, and (5) the fact that Gonzales returned from behind the residence on McBride Street with heroin in his possession. These circumstances, we believe, amount to "factual and practical considerations of everyday life on which reasonable and prudent men * * act," and accordingly we conclude that the requisite probable cause was established.

Next we consider the legality of Agent Durel's entry into appellant's house. The Agent knocked at the door and it was opened by a man who informed Durel that appellant was in the bedroom. Durel then entered the house, went to the bedroom, identified himself, placed appellant under arrest and advised her of her rights.

Precedent in this court and the Supreme Court of the United States indicate that entry through an open door without force does not constitute a "breaking", and hence does not require notice of authority and purpose. Ng Pui Yu v. United States, (9 Cir. 1965) 352 F.2d 626; Dickey v. United States, (9 Cir. 1964) 332 F.2d 773. See also Miller v. United States, (1958) 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332.

Since there was a lawful entry into appellant's house, and probable cause to arrest appellant, the resulting seizure of the recorded money, made incident to the arrest, was also lawful.

Next appellant contends that Agent Broquez's testimony concerning certain statements made by the informer and Gonzales was hearsay and accordingly improperly admitted into evidence. The first statement complained of was offered in Agent Borquez's testimony regarding the July 28 transaction:

> "The information [sic], Manuel Martinez, he came back to where I was waiting at the corner and he made me aware that we were to come back in about a half hour because the woman had not arrived with the heroin that we were to get. So we waited there in the truck."

The second statement complained of concerned the August 29 transaction. Agent Borquez testified as follows:

> "Well, the same agents again met with the informant at Florence and Alameda where we usually met, and on this occasion the informant telephoned No. 587–1781, and with his permission I listened on a twin phone to this conversation. He asked for Froggy [Gonzales] and Froggy answered 'Yes, this is Froggy.' Then he asked Froggy if he could score some heroin * * * "

> "If he could purchase some heroin, and Froggy told him—Mr. David Gonzales told him that he would have to come up and pick him up and take him over to meet with the woman."

These statements were not offered for the truth of their assertion. The trial judge correctly admonished the jury that the statements were "not competent evidence of the fact, if it is a fact, that his source was a woman. But it is only evidence which will permit you to follow the sequence of events."

The second statement above was admissible under another theory although the theory was not advanced at the trial. We consider it along with the claim of error in the admission of certain statements made during Gonzales' conversations with Borquez—i. e. "the woman is on her way," "she was on her way," and "the woman did not trust him and he had to have the money first."

All the statements related by Borquez, except the first one (July 28 transaction), were admissible against appellant because of independent evidence of a concert of action between Gonzales and appellant. For this purpose, there was no need for an allegation, or showing, of a criminal conspiracy. Williams v. United States, (9 Cir. 1961) 289 F.2d 598; Fuentes v. United States, (9 Cir. 1960) 283 F.2d 537. The Supreme Court, in Hitchman Coal & Coke Co. v. Mitchell, (1917) 245 U.S. 229, 249, 38 S.Ct. 65, 72, 62 L.Ed. 260, stated:

> "In order that the declarations and conduct of third parties may be admissible in such a case, it is necessary to show by independent evidence that there was a combination between them and defendants, but it is not necessary to show by independent evidence that the combination was criminal or otherwise unlawful. The element of illegality may be shown by the declarations themselves."

We are of the opinion that the requisite independent evidence of a concert of action between Gonzales and appellant is present in this case and accordingly the statements were properly admitted.

The only statement related by Borquez which does not come within this rule was the first statement regarding the July 28 transaction. Not only was the matter properly handled by the court's instruction to the jury but in view of all the other evidence in the case concerning appellant's activities, the reference to "the woman" was certainly harmless error at the best.

Nor do we find merit to appellant's contention concerning the legality of Borquez listening in on the conversation between the informer and Gonzales. Rathbun v. United States, (1957) 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134.

Our decision on the admissibility of the statements objected to by appellant does not violate the rule laid down in Bruton v. United States, (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. In a footnote at page 128, 88 S.Ct. at page 1623 of its opinion, the Supreme Court stated:

> "We emphasize that the hearsay statement inculpating petitioner was clearly inadmissible against him under traditional rules of evidence, * * *. There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned and we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause."

The statements under scrutiny in this case, as we have decided, were either not hearsay or were admissible under the "concert of action" exception to the rule.

■ In her fifth assertion of error appellant contends that the presumption in 21 U.S.C. § 174 is unconstitutional. The law on this point is to the contrary. Yee Hem v. United States, (1925) 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904; Nutter v. United States, 412 F.2d 178 (9 Cir. 1969); Jones v. United States, (9 Cir. 1968) 400 F.2d 134; Juvera v. United States, (9 Cir. 1967) 378 F.2d 433; Brown v. United States, (9 Cir. 1966) 370 F.2d 874.

■ Appellant also argues that she was not shown to have or have had possession of narcotics. In view of the facts in this case, and in light of the instruction given by the trial judge to the jury concerning actual and constructive possession, we disagree.

Finally, appellant contends that there is no competent evidence in the record to support the verdict of guilty. The facts pointed out in the preceding paragraphs show this contention is without merit.

The judgment of the district court is affirmed.