**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jack Steven KARNES, Defendant-Appellant.**

**No. 25490.**

United States Court of Appeals, Ninth Circuit.

Jan. 22, 1971.

James H. Webster (argued), of Bodle, Fogel, Julber & Reinhardt, Los Angeles, Cal., for defendant-appellant.

Richard L. Jaeger (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Robert L. Brosio, Chief, Crim. Div., Henry J. Novak, Jr., Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HAMLEY, BROWNING and TRASK, Circuit Judges.

TRASK, Circuit Judge:

In 1945 appellant, Jack Steven Karnes, was sentenced to ten years in prison and dishonorably discharged from the United States Army for the crime of desertion. After passage of the Omnibus Crime Bill and Safe Streets Act of 1968, Karnes received firearms shipped in interstate commerce to his business located in South El Monte, California, and performed various welding and machining operations on those firearms. In November 1968, Karnes crossed the California-Arizona border with 50 carbines and delivered them to a firearms dealer in Phoenix, Arizona. On these facts, Karnes was convicted by a jury for violation of 18 U.S.C. App. § 1202(a) (2), which prohibits a person who has been dishonorably discharged from the Armed Forces from receiving, possessing, or transporting in commerce, any firearms.[1] A five-year probationary sentence was imposed upon Karnes by the district judge in lieu of the statutory penalties of a $10,000 fine or imprisonment not to exceed two years, or both.[2] We have jurisdiction over this appeal. 28 U.S.C. § 1291.

Karnes disputes nothing on this appeal but the constitutionality of the statute he was convicted of violating. We find no violation of the Constitution, and we affirm the judgment.

Three challenges to the statute's constitutionality are raised: (1) that it violates the Due Process Clause of the Fifth Amendment; (2) that it is a Bill of Attainder; and, (3) that it is an Ex Post Facto law. We will deal with the Due Process claim first because it effectively answers the other constitutional questions.

## THE DUE PROCESS CLAIM

The question raised by Karnes is whether the statute under which he was convicted violates the Due Process

---

1. 18 U.S.C. App. § 1202(a) (2) provides in pertinent part:
   "Any person who—

   (2) has been discharged from the Armed Forces under dishonorable conditions, * * * and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

2. 18 U.S.C. § 3651 allows the district court discretion to impose either the statutory sentence or probation for a period not to exceed five years, regardless of the length of the statutory sentence.

Clause of the Fifth Amendment if Karnes can prove that Congress had no basis for restricting the right to employment of those dishonorably discharged for non-violent and petty crimes. His employment is restricted because he may not lawfully work on firearms in the course of his machining business. Karnes is a member of that class because he was discharged for a non-violent crime—desertion.[3] Appellant first invites the court to hold the statutory classification invalid because it is not a necessary means of promoting a compelling governmental interest. *See* Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). As appellant recognizes, this strict standard of review applies only if the classification threatens a basic civil right. United States v. Thoresen, 428 F.2d 654, 658 (9th Cir. 1970).[4]

The policy underlying careful inspection of statutes affecting such basic rights lies in the preferred position given to them, and thus the First Amendment furnished an abundant source of such rights,[5] but they have additional sources.[6] The concern of the courts in allowing broad legislation to affect basic rights is that the activity that our society has expressly or impliedly determined to protect and foster should not be discouraged without a clear showing of the need to restrict the right. Also, because the courts rarely have the opportunity to examine the infringement of these rights, they should take a staunch position to protect them at the earliest opportunity and allow the legislature to correct any deficiencies by narrowly redrafting the statute. Those concerns, however, have no place here. All who are affected by this statute have engaged in activity that should be discouraged—criminal activity. And none are engaged in conduct—possession of firearms—that should be fostered or protected, nor are the rights at issue of the type that could not be constitutionally regulated by any statute,[7] nor is the interest here similar to any of those that are presently considered basic.[8]

3. Karnes does not claim that the words of the statute are vague and that they fail to give sufficient notice of the act for which criminal liability is imposed to allow people to conform their conduct to the law.

4. Labeling the right as "fundamental," United States v. Guest, 383 U.S. 745, 757–758, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966), or "constitutional," Shapiro v. Thompson, 394 U.S. 618, 631, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), or "guaranteed by the Bill of Rights," Dandridge v. Williams, 397 U.S. 471, 484, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), or "basic," United States v. Thoresen, 428 F.2d 654, 658 (9th Cir. 1970), adds nothing to the analysis of the reasons for the application of the strict standard of review, but as a shorthand term for the type of rights to which this analysis has been applied we adopt the term "basic."

5. *E. g.,* United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967) ; Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) ; Bates v. Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960).

6. The Supreme Court has not felt it necessary to trace all basic rights to the Constitution. Some rights without a precise origin are nonetheless protected: Marriage, (Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967)), procreation (Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942)), and travel (Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969)) are examples of rights that do not have an express constitutional basis.

7. United States v. Robel, 389 U.S. 258, 266–267, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967), (statute punishing any member of the Communist Party who continued to work in a defense facility after the Party was ordered to register held unconstitutional because it did not distinguish between active and passive membership).

8. Basic rights have been found to be among those rights protected by the First Amendment, *see* note 5 *supra,* or long impliedly recognized in a variety of constitutional provisions, Shapiro v. Thompson, 394 U.S. 618, 630 n. 8, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), or funda-

■■ The cases declaring the right to employment to be a right protected by the Fifth Amendment [9] are inapposite for they only bring the right within the "liberty and property" protected by the Fifth Amendment. Whether a higher standard of exactness is required to uphold the statute is another matter.[10] Adequate protection of the right to engage in particular employment would seem to be furnished by the traditional test for Due Process—whether there is a rational factual basis for the legislation.

Moreover, even if we were to afford the right to employment a preference, we would have to find an infringement of that right. The statute here does not affect the total population and set up a barrier that everyone must pass in order to secure the benefits of certain employment.[11] Karnes is not totally deprived of his occupation and skill as a machinist although he is admittedly prevented from working upon one type of item—firearms. Karnes presented no evidence as to the extent of his business or whether he could continue as a machinist by working on other items. Thus there is some question whether this statute would sufficiently abridge the right to employment [12]—even if that right were accorded preferential treatment.

■ We see no reason for applying the strict standard of review to a Fifth Amendment claim that a legislative classification has abridged an economic interest,[13] but even if it were applied our conclusion would be the same.[14]

■■ The interest asserted here is adequately protected by the traditional requirement that the means selected by Congress—the statutory classification—be reasonably calculated to achieve the legitimate end.[15] The statute may be stricken only if it is clearly unfounded.[16] Thus we would first consider the legislative finding, then the evidence brought before the court by the person challenging that finding and after weighing that evidence reach our conclusion.

Congress found that "the receipt, possession, or transportation of a firearm by * * * veterans who are discharged under dishonorable conditions * * * constitutes—

(1) a burden on commerce or threat affecting the free flow of commerce,

(2) a threat to the safety of the President of the United States and Vice President of the United States,

(3) an impediment or a threat to the exercise of free speech and the free exercise of a religion guaranteed by the first amendment to the Constitution of the United States, and

mental to the very existence and survival of the race, Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

9. United States v. Robel, 389 U.S. 258, 263, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967) (dictum); Greene v. McElroy, 360 U.S. 474, 492, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) (implied holding); Schware v. Board of Bar Examiners, 353 U.S. 232, 247, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (implied holding); Dent v. West Virginia, 129 U.S. 114, 121–122, 9 S.Ct. 231, 32 L.Ed. 623 (1889).

10. Compare Aptheker v. Secretary of State, 378 U.S. 500, 505–506, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964).

11. Compare Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889) (requirements for a license to practice medicine).

12. Cafeteria and Restaurant Workers v. McElroy, 367 U.S. 886, 894–898, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

13. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

14. In Sibron v. New York, 392 U.S. 40, 59–62, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), the Court refused to decide whether a statute allegedly infringing upon Fourth Amendment rights was unconstitutional "on its face."

15. Schneider v. Rusk, 377 U.S. 163, 166–167, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964); United States v. Thoresen, 428 F.2d 654 (9th Cir. 1970). Appellant does not dispute the legitimacy of the goal of the statute—prevention of acts of armed violence.

16. Radice v. New York, 264 U.S. 292, 294, 44 S.Ct. 325, 68 L.Ed. 690 (1924).

(4) a threat to the continued and effective operation of the Government of the United States and of the government of each State. * * *" 18 U.S.C. App. § 1201.

That legislative finding is entitled to some weight,[17] and in the absence of contrary proof should compel a finding of constitutionality. Karnes failed to present any proof to compel a contrary conclusion. Rather, he rested his case upon the argument that only a person convicted for a past crime of violence could be expected to commit a crime of violence in the future.[18] He developed that argument by pointing out that dishonorable discharge may result from many offenses which are non-violent in character and the risk of repetition of which involve no consequences such as are sought to be prevented by section 1201. Karnes argues that the net thus snares too many in its meshes. It is overbroad generally and overbroad as to appellant whose dishonorable discharge was part of a sentence for desertion. Desertion, it is asserted, includes two simple, non-violent elements: absence from duty, and an intention not to return. Therefore, under the rule of Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), the statute must be invalid at least as to appellant.[19]

■ In *Shapiro*, however, there was a lack of legitimate purpose in the imposition of the restriction on a fundamental right. The result was a classification which constituted an invidious or impermissible discrimination. In this case the opposite is true. There is a legitimate end to be served. The interests which are sought to be promoted by the classification are constitutionally permissible objectives. As a matter of fact, Karnes has presented nothing to dispel the idea that any person who has committed some crime in the past might commit a crime of violence in the future. Common sense, at least, indicates that persons with criminal convictions would have more of a tendency to commit a crime of violence than persons without criminal records. Without proof to the contrary, we are compelled to reach the conclusion that this legislation is not without some rational basis. It is not clearly unfounded,[20] thus it is constitutional.

## OTHER ARGUMENTS

■ Disposition of the Due Process claim necessarily disposes of the remaining contentions for the same standard is applicable to each claim. A Bill of Attainder is claimed to be present here because in Karne's view the inference is impermissible that dishonorably discharged veterans might engage in acts of armed violence. We have found the inference permissible; moreover, this is not a legislative trial and punishment but only a legislative recognition of a prior established judicial fact—conviction.

■ Appellant also contends that this statute, because it was enacted after his discharge, penalizes him for past conduct and is therefore an Ex Post Facto law. But appellant admits the exception that where Congress has rationally concluded that persons who have demonstrated a tendency in the past to engage in conduct that Congress has the

17. United States v. Carolene Products Co., 304 U.S. 144, 152, 58 S.Ct. 778, 82 L. Ed. 1234 (1938).

18. A similar argument has been recently rejected. United States v. Thoresen, 428 F.2d 654 (9th Cir. 1970).

19. Shapiro v. Thompson is not discussed in terms of overbreadth which is most frequently reserved for First Amendment problems. See The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844 (1970).

20. At least as to Karnes who committed the military equivalent of a felony because he was sentenced to ten years in prison (18 U.S.C. § 1), there can be no doubt that absent other evidence the implicit finding that felons have a propensity for violence is clearly supportable. Williams v. United States, 426 F.2d 253 (9th Cir. 1970).

power to proscribe, Congress may restrict such future activities without violating the Ex Post Facto prohibition. Thus, resolution of the Due Process question disposes of appellant's arguments.[21]

The judgment is affirmed.

2.  *See generally* Williams v. United States, 426 F.2d 253 (9th Cir. 1970).