**UNITED STATES of America**

v.

**George WEINGARTNER, Defendant.**

**Crim. No. 79–332.**

United States District Court,
D. New Jersey,
Criminal Division.

Oct. 4, 1979.

Warren S. Robins, Sp. Atty., Newark Strike Force, Robert J. DelTufo, U. S. Atty., D. New Jersey, Newark, N. J., for plaintiff.

Leonard Meyerson, Miller, Hochman, Meyerson & Schaeffer, Jersey City, N. J., for defendant.

## OPINION

COOLAHAN, Senior District Judge.

Defendant George Weingartner is charged in this three-count indictment with violations of 18 U.S.C. § 922(h)(1),[1] which makes unlawful the receipt of firearms shipped or transported in interstate commerce by a person under indictment for an offense punishable by imprisonment exceeding one year. Specifically, it is alleged that defendant received firearms (previously in interstate carriage) during December, 1977 (Count I), May, 1978 (Count II), and June, 1978 (Count III); and, that at those times, defendant was under indictment in this District for violations of 18 U.S.C.,

---

1. 18 U.S.C. § 922(h)(1) provides, in pertinent parts, that:

"It shall be unlawful for any person—(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . to receive any firearm or am-

§§ 371, 1503, 2512(1)(a),[2] (Criminal No. 74–313, hereinafter "1974 indictment").

Presently before the Court is defendant's omnibus pre-trial motion, F.R.Crim.P. 12(b). Defendant moves that we dismiss the instant indictment, hold a *Franks* hearing[3] on the truthfulness of certain portions of the search warrant affidavit, and suppress evidence seized pursuant to various warrants based on that affidavit. Defendant also requests a bill of particulars, wherein he principally seeks information concerning the Government's decision to dismiss the 1974 indictment.

Most of the facts pertinent to consideration of the motions *sub judice* relate to the history of proceedings under the 1974 indictment. On Friday, September 28, 1979, on the Government's motion pursuant to F.R.Crim.P. 48(a), this Court (per my Brother, The Honorable H. Curtis Meanor) signed an Order dismissing the 1974 indictment against Weingartner. It is uncontested that the reason asserted therefor was the unavailability of key Government witnesses. We also take note of defendant's contention that on or about June 26, 1979, the Office of the United States Attorney declared that it did not intend to pursue prosecution of one of Weingartner's co-defendants under the 1974 indictment.[4]

During the late spring and summer of 1979, Weingartner voluntarily testified five times before the grand jury in connection with this and other somewhat related investigations. Each time defendant appeared, he was duly informed that he was a target of the investigation(s), and he was further informed of his applicable rights. On August 16, 1979, in pertinent parts, Weingartner testified:

"[Mr. Weingartner] We have all talked about indictment 74–313 here. I was indicted in 1974, and have not asked for one postponement. That's why I'm so concerned about a Grand Jury because at that time, unaware that I was that we could speak before a Grand Jury like I am today, I just went down and refused to answer questions and we got indicted and yet this indictment, and I am sure Mr. Robins [the prosecutor] knows about it and everyone else, is going to be dismissed. [*Sic.*]

"[Mr. Robins] Just to make the record, Mr. Robins does not know whether the indictment will be dismissed."

Appendix to the Government's Brief in Opposition to Defendant's Various Pre-Trial Motions (hereinafter "Gov't Br., App."), Transcript of Grand Jury Proceedings, August 16, 1979, at 42.

It is also noteworthy that the record substantiates the Government's assertion that Weingartner never challenged the validity of the 1974 indictment. *See* Gov't Br., App., Affidavit of Warren S. Robins, Special Attorney, ¶ 3. Indeed, the docket of Criminal No. 74–313 (and that of a related case, Criminal No. 74–314, in which Weingartner was not a co-defendant,) reveal that the delay in bringing Criminal No. 74–313 to trial was occasioned by numerous pre-trial motions, competency and taint hearings, and subsequent stays and appeals to the Third Circuit.

The following seemingly important events also warrant our attention. During his initial grand jury appearances, Weingartner expressed a desire to play his tape recordings of certain conversations. On August 2, 1979, he indicated that he had five tapes he wished the grand jury to hear, one of which contained a conversation between Weingartner and two (formerly undercover) Government Agents investigating this and other suspected offenses. In order

---

munition which has been shipped or transported in interstate or foreign commerce."

**2.** Each of these three offenses is punishable by a term of imprisonment in excess of one year. Each of the offenses alleged in the underlying 1974 indictment, therefore, can serve as the predicate indictment for a violation of 18 U.S.C. § 922(h)(1).

**3.** *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). *See* discussion in Part II, b., *infra.*

**4.** The Government has not contested this assertion.

to avoid wasting the grand jurors' time, the foreman directed that Weingartner first play his tapes for the prosecuting attorneys in their office, so that the prosecutors could preliminarily assess (and thereafter advise the grand jury of) the audibility and relevancy of the tapes. Gov't Br., App., Transcript of Grand Jury Proceedings, August 2, 1979, at 24–27.

After initially failing to make such arrangements, Weingartner was again directed by the foreman of the grand jury to do so. Gov't Br., App., Transcript of the Grand Jury Proceedings, August 16, 1979, at 9–12. On August 21, 1979, Weingartner, accompanied by one Richard DeScissio, came to the prosecutor's office where Weingartner played several tapes in the presence of the prosecuting attorney, Mr. DeScissio, and the two (formerly undercover) Government Agents. Defendant initially objected to playing his tapes in the presence of the two Government Agents (who were supposedly parties to some of the recorded conversations), but eventually he agreed to do so. Gov't Br., App., Transcript of Grand Jury Proceedings, August 23, 1979, at 33.

Each of defendant's motions shall be considered in turn.

## I. MOTION TO DISMISS THE INDICTMENT

Defendant makes a four-pronged attack on this concededly facially valid indictment. First, he urges that 18 U.S.C. § 922(h)(1) is unconstitutional as applied. Second, he asserts that the prosecutor's failure to inform the grand jury of the dismissal or potential dismissal of the underlying 1974 indictment constituted gross usurpation of the discretionary power of the grand jury not to return an indictment. Third, even if the prosecutors' actions do not warrant dismissal, defendant further argues that "fundamental fairness" requires that the Court quash the instant indictment because it was returned after the dismissal of the underlying indictment. Finally, defendant contends that the presence of the two formerly undercover Government Agents during the preliminary playing of Weingartner's tapes constituted an unauthorized disclosure of a grand jury proceeding in violation of Rules 6(d), 6(e), F.R.Crim.P. Each of his arguments shall be considered *seriatim.*

### a. *Constitutionality of 18 U.S.C. § 922(h)(1) As Applied*

Defendant offers a triad of theories supporting his argument that this statute is unconstitutional as applied. Only two of his theories, however, require complete textual consideration:[5] first, that the statutory scheme operates to deny Weingartner equal protection; and, second, that the statute contains an irrebuttable presumption.

### 1. *Equal Protection*

■ Unlike the Fourteenth Amendment, the Fifth Amendment does not contain an express Equal Protection Clause. The fundamental principle of equal protection un-

---

**5.** Somewhat obliquely, defendant also argues that Congress did not intend to include so-called "non-violent" offense indictees within the class of persons prohibited from the interstate receipt of firearms.

The short rebuttal to this argument is found in the plain language Congress employed in section 922(h)(1). Defendant cites no authority for the proposition that legislative history controls (rather than aids in the interpretation of) the plain language of a statute. The absence of such citation is self-explanatory.

Furthermore, defendant's carefully chosen snippets of legislative history paint a woefully incomplete picture. Contrary to defendant's argument, the legislative history of 18 U.S.C. § 922(h)(1) and its predecessor statutes (e. g., 15 U.S.C. § 902(f) (repealed)), substantiates Congress' intention to prohibit all persons then

under indictment for enumerated serious offenses from the interstate receipt of firearms. *United States v. Craven,* 478 F.2d 1329, 1339 (6th Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973) ("The Congressional findings and declaration of purpose of Title IV of the *Omnibus Crime Control and Safe Streets Act* of 1968 and the legislative history of this title amply demonstrate the nexus between violent criminal activity and the use of firearms".) For an accurate and thorough review of the legislative history of the firearms statutes, *see United States v. Craven, supra,* 478 F.2d at 1335–39 & nn. 3–4. *See also United States v. Wynde,* 579 F.2d 1088, 1090–91 (8th Cir.), *cert. denied,* 439 U.S. 871, 99 S.Ct. 204, 58 L.Ed.2d 184 (1978); *United States v. Graves,* 554 F.2d 65, 73–74 (3d Cir. 1977) (*en banc*).

der the law, however, is inherent in the Fifth Amendment's Due Process Clause. *Mathews v. De Castro*, 429 U.S. 181, 182 n. 1, 97 S.Ct. 431, 432 n. 1, 50 L.Ed.2d 389 (1976). As stated in *Schneider v. Rusk*, 377 U.S. 163, 168, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218 (1964): "while the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.'"[6]

Thus, although the protections afforded by the Fifth and Fourteenth Amendments "are not always coextensive," *Hampton v. Mow Sun Wong*, 426 U.S. 88, 100, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976), equal protection challenges to federal laws and regulations generally have been tested with the standards developed under the Equal Protection Clause of the Fourteenth Amendment. *See, e. g., Shapiro v. Thompson*, 394 U.S. 618, 642–43, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *United States v. Wynde*, 579 F.2d 1088, 1093 (8th Cir.), *cert. denied*, 439 U.S. 871, 99 S.Ct. 204, 58 L.Ed.2d 184 (1978); *United States v. Craven*, 478 F.2d 1329, 1338–40 (6th Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973); *United States v. Thoresen*, 428 F.2d 654, 658 (9th Cir. 1970).

■ Under settled equal protection doctrine, a statute that neither impermissibly infringes on the exercise of a fundamental right nor distinctly disadvantages a suspect class of persons is upheld so long as there is any rational basis underlying the statutory scheme.[7] *E. q., Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 & nn. 3–4, 96 S.Ct. 2562, 2566 & nn. 3–4, 49 L.Ed.2d 520 (1976); *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 16, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16 (1973); *Hurtado v. United States*, 410 U.S. 578, 590, 93 S.Ct. 1157, 1164, 35 L.Ed.2d 508 (1973). This rational basis test "does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all. . . . It is enough that the State's action be rationally based and free from invidious discrimination." *Dandridge v. Williams*, 397 U.S. 471, 486–87, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970) (citation omitted). It "employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one." *Massachusetts Bd. of Retirement v. Murgia, supra*, 427 U.S. at 314, 96 S.Ct. at 2567. Thus, the challenged statute will not be overturned "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purpose that [the Court] can only conclude that the legislature's actions were irrational." *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979).

■ Defendant recognizes that earlier equal protection challenges to indictee classification schemes like that embodied in 18 U.S.C. § 922(h)(1) have been uniformly unsuccessful, *e. g., United States v. Craven, supra*, 478 F.2d at 1338. He attempts instead to factually distinguish this case by observing that the 1974 indictment did not charge him with any "violent" offense. Conceding, *arguendo*, that the "non-violent" offenses charged in the underlying indictment can serve as a basis for a section 922(h)(1) firearms offense, see notes 2, 5 *supra*, defendant urges that we find irrational the inclusion of so-called "non-violent" offense indictees within the class prohibited from the receipt of firearms previously in interstate carriage.

Defendant's argument is neither novel nor persuasive. At least two Circuits of the United States Court of Appeals have considered and rejected the same argument about an identical classification scheme in a

---

**6.** *Quoting Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

**7.** The rational basis standard is employed in equal protection challenges to 18 U.S.C. § 922(h)(1) and related firearms statutes. *United States v. Wynde, supra; United States v.* *Craven, supra; United States v. Brown*, 484 F.2d 418 (5th Cir. 1973), *cert. denied*, 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974); *United States v. Thoresen*, 428 F.2d 654 (9th Cir. 1970).

related statute, 15 U.S.C. § 902(e) (repealed).[8] In *United States v. Thoresen, supra*, the Ninth Circuit reasoned that the extension of the firearms prohibition to indictees of "non-violent" offenses was rationally based on the ineffectiveness of the prior "violent" offense restriction. 428 F.2d at 659. The Fifth Circuit likewise found the same argument wanting in *United States v. Brown*, 484 F.2d 418, 423–24 (1973), *cert. denied*, 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974), stating:

"[W]e find no merit in the claim that § 902(e) is unconstitutional for the alleged reason that it draws no distinction between indictment for crimes of violence and non-violence . . . . We are unable to conclude that this classification is without a rational basis. The differentiation of the statute among indicted persons according to the seriousness of the crimes with which they are charged is, without more, sufficient in our judgment."

Furthermore, and contrary to defendant's argument, *Thoresen* and *Brown* are valid precedent here because the line drawn in now repealed 15 U.S.C. § 902(e) is identical to that drawn in present 18 U.S.C. § 922(h)(1). *See United States v. Craven, supra*, 478 F.2d at 1335 n. 3, 1339; *compare* note 8 *supra with* note 1 *supra*.

This Court concurs in the well-reasoned conclusions of both the Fifth and Ninth Circuits that this indictee classification is not irrational. Congress could rationally conclude that persons indicted for non-trade regulation offenses punishable by a term of imprisonment exceeding one year have a significantly greater propensity for the mis-

use of firearms than the population as a whole. In enacting the Omnibus Crime Control and Safe Streets Act of 1968, which retained the substance of repealed 15 U.S.C. § 902(f) in present 18 U.S.C. § 922(h)(1), see note 8 *supra* and cases cited therein, Congress did not merely attempt to restrict interstate firearms transactions. Rather, it also sought in the broadest sense to prohibit the acquisition of firearms by persons it reasonably viewed as potentially dangerous or irresponsible. *See Barrett v. United States*, 423 U.S. 212, 220–21, 96 S.Ct. 498, 502–03, 46 L.Ed.2d 450 (1976). This conclusion is reinforced by the temporary nature of the barrier erected in section 922(h)(1), for the prohibition *in futuro* evaporates upon dismissal of the underlying indictment or acquittal at trial. In these circumstances, it cannot be seriously thought that the classification Congress enacted lacks any rational basis. *United States v. Thoresen, supra*, 428 F.2d at 658–59, *followed in United States v. Craven, supra*, 478 F.2d at 1339.

Accordingly, we find that 18 U.S.C. § 922(h)(1) does not deny defendant equal protection as applied.

### 2. *Irrebuttable Presumption*

Defendant's second theory is that section 922(h)(1) contains an irrebuttable presumption akin to those proscribed in *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and its progeny, e. g., *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). Stripped to its essence, it is defendant's theory that the statute in question conclusively presumes that any person under indictment for the

---

8.  15 U.S.C. § 902(e) (repealed) provided, in pertinent parts, as follows:

"It shall be unlawful for any person who is under indictment or who has been convicted of a crime punishable by imprisonment for a term exceeding one year . . . to ship, transport, or cause to be shipped or transported in interstate or foreign commerce any firearm or ammunition."

*Quoted in United States v. Brown, supra*, 484 F.2d at 420 n. 1.

Although 18 U.S.C. § 922(h)(1) prohibits the receipt, as opposed to the shipping or transporting, of firearms, its classification scheme is substantively identical to that employed in repealed 15 U.S.C. § 902(e). *United States v. Craven, supra*, 478 F.2d at 1335 n. 3, 1339. We follow the path outlined by the Sixth Circuit in *Craven* and like it find that cases construing the rationality of repealed 15 U.S.C. § 902(e) are valid precedents in this 18 U.S.C. § 922(h)(1) action. *Id.*

We also note parenthetically that present 18 U.S.C. § 922(h)(1) is substantively identical to repealed 15 U.S.C. § 902(f). Present 18 U.S.C. § 922(g) includes the substantive provisions of repealed 15 U.S.C. § 902(e).

specified offenses has a propensity for violence.

This argument is also unpersuasive. *Leary* and its progeny are inapposite because an indictee's propensity for violence is not an element of a section 922(h)(1) charge. The Ninth Circuit rejected the same argument in *United States v. Thoresen, supra,* 428 F.2d at 661. The *Thoresen* Court explained that *Leary* concerns an evidentiary presumption: proof of one element of the offense, possession of marijuana, irrebuttably established a second element, knowledge of illegal importation.[9] On the other hand, section 922(h)(1) embodies a Congressional policy determination that the status of indictment for certain offenses is indicative of a propensity for the misuse of firearms. *See United States v. Craven, supra,* 478 F.2d at 1339. Put another way, the status of being under indictment for an offense punishable by imprisonment exceeding one year is an element of a section 922(h)(1) offense, but, unlike *Leary* or its progeny, proof thereof does not irrebuttably or conclusively establish any other element of the offense.

Accordingly, the Court rejects defendant's arguments that 18 U.S.C. § 922(h)(1) is unconstitutional as applied.

### b. *Failure to Inform the Grand Jury of the Dismissal of the Underlying Indictment*

Defendant's next ground in support of his motion to dismiss is that the prosecutor's failure to voluntarily inform the grand jury of the dismissal or potential dismissal of the underlying 1974 indictment was a flagrant abuse of the grand jury and warrants quashing the subject indictment. Before consideration is given this argument, however, it is appropriate to make some preliminary observations.

First, it is noteworthy that the grand jury was not unaware of the possibility that the 1974 indictment against Weingartner might be dismissed. Weingartner himself testified before the grand jury that he thought dismissal of the underlying indictment was imminent. *See* discussion at 1169, *supra.* The prosecuting attorney thereupon denied any personal knowledge of the potential dismissal.

Second, there is no evidence of record that the prosecutor's denial of personal knowledge of the potential dismissal was not made in good faith. Defendant also has not explicitly contended otherwise. We also think it reasonable to infer that the grand jurors did not make any subsequent inquiry of the prosecutor concerning the status of the 1974 indictment. Nor, do we assume, did the prosecutor volunteer any further information on this score.[10]

Finally, we need not consider whether the prosecutor was under a duty to disclose the potential dismissal of the underlying indictment, inasmuch as the subject indictment was not returned until after the dismissal of the 1974 indictment. If the Government attorney was under no duty to inform the grand jury of the actual dismissal, *a fortiori* he was not obliged to inform the jurors of the possibility of dismissal. Thusly framed, the question presented is whether the prosecutor is legally bound to inform the grand jury of the dismissal of the underlying or predicate indictment. This question, in turn, requires preliminary consideration of the function assigned the grand jury in our system of criminal jurisprudence.

In *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), Mr. Jus-

---

**9.** Like *Leary, Vlandis v. Kline, supra,* concerns an evidentiary presumption: proof of a student's out-of-state residence upon entry into the state university irrebuttably established the student's non-resident status for the duration of his or her enrollment in the state university. 412 U.S. at 446–47, 93 S.Ct. 2233–34. The constitutional infirmity of an evidentiary irrebuttable presumption lies in its preclusion of the introduction of any evidence negating the presumption. No such difficulty is engendered by the Congressional policy determination embodied in present 18 U.S.C. § 922(h)(1). *See United States v. Thoresen, supra,* 428 F.2d at 661.

**10.** The Government's brief and appendix in this matter is thorough. If such disclosures had occurred, the Government undoubtedly would have so informed the Court.

tice Black, in an oft-quoted passage,[11] reviewed the constitutional function of the grand jury. His explanation is well worth our attention:

> "The Fifth Amendment provides that federal prosecutions for capital or otherwise infamous crimes must be instituted by presentments or indictments of grand juries. But neither the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act. *The grand jury is an English institution, brought to this country by the early colonists and incorporated in the Constitution by the Founders. There is every reason to believe that our constitutional grand jury was intended to operate substantially like its English progenitor. The basic purpose of the English grand jury was to provide a fair method for instituting criminal proceedings against persons believed to have committed crimes. Grand jurors were selected from the body of the people and their work was not hampered by rigid procedural or evidential rules. In fact, grand jurors could act on their own knowledge and were free to make their presentments or indictments on such information as they deemed satisfactory. Despite its broad power to institute criminal proceedings the grand jury grew in popular favor with the years. It acquired an independence in England free from control by the Crown or judges. Its adoption in our Constitution as the sole method for preferring charges in serious criminal cases shows the high place it held as an instrument of justice. And in this country as in England of old the grand jury has convened as a body of laymen, free from technical rules, acting in secret, pledged to indict no one because of prejudice and to free no one because of special favor.* As late as 1927 an English historian could say that English grand juries were still free to act on their own knowledge if they pleased to do so. And

in 1852 Mr. Justice Nelson on circuit could say 'No case has been cited, nor have we been able to find any, furnishing an authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof . . . .' *United States v. Reed*, 27 Fed.Cas. pages 727, 738, No. 16,134.

> "In *Holt v. United States*, 218 U.S. 245, 31 S.Ct. 2, 4, 54 L.Ed. 1021 this Court had to decide whether an indictment should be quashed because supported in part by incompetent evidence. Aside from the incompetent evidence 'there was very little evidence against the accused.' The Court refused to hold that such an indictment should be quashed, pointing out that 'The abuses of criminal practice would be enhanced if indictments could be upset on such a ground.' 218 U.S., at 248, 31 S.Ct. at 4. The same thing is true where as here all the evidence before the grand jury was in the nature of 'hearsay.' *If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.*"

*Id.* at 361–63, 76 S.Ct. at 408–409 (emphasis supplied) (footnotes omitted).

*Costello* teaches that the constitutional "rights" afforded the accused by the Grand

---

11. *E. g., United States v. Ciambrone*, 601 F.2d 616, 623 (2d Cir. 1979); *United States v. Kennedy*, 564 F.2d 1329, 1336–37 (9th Cir. 1977), *cert. denied sub nom., Myers v. United States*, 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978); *United States v. Ruyle*, 524 F.2d 1133, 1134–35 (6th Cir. 1975), *cert. denied*, 425 U.S. 934, 96 S.Ct. 1664, 48 L.Ed.2d 175 (1976).

Jury Clause are institutional, not personal, in nature. "The main function of a grand jury is to determine whether or not probable cause exists to believe that a crime has been committed, and, if so, to file charges against such persons as are reasonably believed to have committed it." *United States v. Ciambrone*, 601 F.2d 616, 622 (2d Cir. 1979), *citing Branzburg v. Hayes*, 408 U.S. 665, 686–87, 92 S.Ct. 2646, 2659–60, 33 L.Ed.2d 622 (1972). "A grand jury proceeding is not an adversary hearing in which the guilt or innocence of the accused is adjudicated." *United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974). Thus, "an indictment is not defective because the defendant did not have an opportunity to present his version of the facts to the grand jury." *United States v. Ciambrone, supra*, 601 F.2d at 623 (citations omitted). Rather, the accused is protected by the grand jury *qua* grand jury: a serious federal criminal charge may only be filed by presentment or indictment representing the assent of at least twelve lay grand jurors. Cognizant, we think, of the dangers that would otherwise be posed, the Founders incorporated the grand jury in our constitutional scheme in part to check the executive's charging power.

The source of the grand jury's power to prevent the filing of an unjustified criminal charge lies in its quintessential independence of judgment, "free from control by the Crown or judges." *Costello v. United States, supra*, 350 U.S. at 362, 76 S.Ct. at 408. Its institutional independence from both the executive and the judiciary is the foundation of the "high place it [holds] as an instrument of justice." *Id.*

Judicial recognition of the quintessential role of the federal grand jury begets a concomitant reluctance to peer behind a facially valid indictment presented by a legally constituted and apparently unbiased grand jury. But this reluctance, or the so-called "presumption of regularity", accorded otherwise valid indictments, *United States v. Kahaner*, 204 F.Supp. 921, 923 (S.D.N.Y.1962), *aff'd*, 317 F.2d 459 (2d Cir.), *cert. denied*, 375 U.S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65 (1963), is not conclusive. The judiciary's "inherent supervisory authority over federal criminal proceedings", *United States v. Birdman*, 602 F.2d 547, 558 (3d Cir. 1979), *appeal pending*, enables the courts to ensure that the grand jury is free to play its assigned role. "The protection of its own functions and the preservation of the purity of its own temple belongs only to the court", *Sorrells v. United States*, 287 U.S. 435, 457, 53 S.Ct. 210, 218, 77 L.Ed. 413 (1932) (separate opinion of Roberts, J.), *quoted in United States v. Birdman, supra*, 602 F.2d at 558. *See also McNabb v. United States*, 318 U.S. 332, 340, 63 S.Ct. 608, 612, 87 L.Ed. 819 (1943), *discussed in Elkins v. United States*, 364 U.S. 206, 222–23, 80 S.Ct. 1437, 1446–47, 4 L.Ed.2d 1669 (1960).

Yet, the role of the courts in supervising the grand jury is very limited, for the Fifth Amendment guarantees a grand jury not only independent of the prosecutor but one whose judgment is equally free from a post-hoc review by the judge. *Costello v. United States, supra*, 350 U.S. at 362, 76 S.Ct. 408. Therefore, "the federal courts have clearly established the principle 'that the dismissal of an indictment on the basis of governmental misconduct is an extreme sanction which should be infrequently utilized.'" *United States v. Birdman, supra*, 602 F.2d at 559, *quoting United States v. Owen*, 580 F.2d 365, 367 (9th Cir. 1978). Prophylactic dismissal of an indictment thus "remain[s] a harsh, ultimate sanction [which is] more often referred to than invoked." *United States v. Baskes*, 433 F.Supp. 799, 806 (N.D. Ill.1977). *See United States v. Russell*, 411 U.S. 423, 431, 431–32, 93 S.Ct. 1637, 1642, 1642–1643, 36 L.Ed.2d 366 (1973); *United States v. Birdman, supra; United States v. Bruzgo*, 373 F.2d 383, 386–87 (3d Cir. 1967).

Whether or not a prosecutor's failure to voluntarily inform the grand jury of substantial exculpatory evidence in his possession so undermines the quintessential independent judgment of the grand jury as to require dismissal of an otherwise proper indictment does not admit of a ready answer. Two of the Circuits have answered in the negative. *United States v. Kennedy*, 564 F.2d 1329, 1335 (9th Cir. 1977), *cert.*

*denied sub nom., Myers v. United States,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978); *United States v. Ruyle,* 524 F.2d 1133, 1135 (6th Cir. 1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1664, 48 L.Ed.2d 175 (1976). In *Kennedy,* the Ninth Circuit concluded:

> "We believe that the rule to be distilled from the authorities discussed must be that *only in a flagrant case, and perhaps only where knowing perjury, relating to a material matter, has been presented to a grand jury should the trial judge dismiss an otherwise valid indictment* returned by an apparently unbiased grand jury. To hold otherwise would allow a minitrial as to each presented indictment contrary to the teaching by Mr. Justice Black in *Costello, supra.*"

564 F.2d at 1338 (emphasis supplied).

On the other hand, the Second Circuit, apparently without knowledge of *Kennedy,* recently indicated (albeit in *dicta* ) that it might reach the contrary conclusion:

> Despite recent movements for revision of grand jury procedure, a prosecutor is not presently obligated to search for and submit to a grand jury evidence favorable to the defense or negating guilt when it has not been requested by the grand jury. . . .
>
> "On the other hand, the prosecutor's right to exercise some discretion and selectivity in the presentation of evidence to a grand jury does not entitle him to mislead it or engage in fundamentally unfair tactics before it. The prosecutor, for instance, may not obtain an indictment on the basis of evidence known to him to be perjurious, *United States v. Basurto,* 497 F.2d 781, 785–86 (9th Cir.

1974), or by leading it to believe that it has received eyewitness rather than hearsay testimony, *United States v. Estepa,* 471 F.2d 1132, 1136–37 (2d Cir. 1972). *We would add that where a prosecutor is aware of any substantial evidence negating guilt he should in the interest of justice, make it known to the grand jury, at least where it might reasonably be expected to lead the jury not to indict.* See ABA Project on Standards for Criminal Justice—The Prosecution Function, § 3.6, pp. 90–91."

*United States v. Ciambrone,* 601 F.2d 616, 622–23 (2d Cir. 1979) (emphasis supplied) (footnotes and other citations omitted).[12]

As the Government has pointed out, the Third Circuit apparently has not considered this precise issue. We do not envy its task when that day arrives. Even if, *arguendo,* dismissal of the indictment is the only sanction available to remedy flagrant prosecutorial misconduct which wholly usurps the grand jury's quintessential independence of judgment, is not the remedy an equally flagrant usurpation of the grand jury's independence? Would not Mr. Justice Black's fear of minitrials of indictments then become the rule? On the other hand, can we turn our judicial cheek to what some have perceived to be the growing use of the grand jury as a pawn or "mere tool" of the prosecutor? *See United States v. Birdman, supra,* 602 F.2d at 555 & n. 26, 559 (and cases cited therein). *See also United States v. Provenzano,* 440 F.Supp. 561, 564 (S.D.N.Y.1977); *United States v. Kleen Laundry & Cleaners, Inc.,* 381 F.Supp. 519, 521–22 (E.D.N.Y.1974); *United States v. Gramolini,* 301 F.Supp. 39, 41–42 (D.R.I.1969).[13]

---

**12.** Unlike *Ciambrone, supra,* here we have no allegation that the prosecuting attorney failed to respond fully to inquiries by grand jurors concerning the presentation of evidence negating guilt. Thus, the reasons which led Judge Friendly to dissent in *Ciambrone* are absent here.

**13.** The Court finds defendant's reliance on the district court opinion in *United States v. DeMarco,* 401 F.Supp. 505 (C.D.Cal.1975), *aff'd,* 550 F.2d 1224 (9th Cir.), *cert. denied,* 434 U.S. 827, 98 S.Ct. 105, 54 L.Ed.2d 85 (1977), wholly

misplaced. First, unlike *DeMarco,* we have no evidence of even an aura of vindictiveness by the prosecuting attorney. *Cf. Blackledge v. Perry,* 417 U.S. 21, 28, 94 S.Ct. 2098, 2120, 40 L.Ed.2d 628 (1974). Second, the Ninth Circuit's affirmance of the district court expressly did not rely on the second ground below; that the prosecutor was obliged to inform the grand jury of its reasons for seeking the California false statement indictment (*i. e.,* to punish defendant's exercise of his statutory venue rights). Third, *United States v. Kennedy, supra,* implies that *DeMarco* should be limited to

We need not, however, attempt to resolve this Hobson's choice today. Whatever disclosure obligation, if any, the courts ultimately impose on the prosecutor surely would not require him to voluntarily disclose the dismissal of the 1974 indictment. The Court concludes, as a matter of law, that the dismissal of the 1974 indictment against defendant Weingartner is neither material to nor exculpatory of defendant's alleged violations of 18 U.S.C. § 922(h)(1). Hence, there was no breach by the prosecutor of his arguable duty to disclose to the grand jury substantial exculpatory evidence in his possession. In reaching this conclusion, we necessarily first find that a section 922(h)(1) offense is complete when, *inter alia*, the firearm is actually or constructively [14] received by a person *then* under the requisite indictment. *See United States v. Brown, supra*, 484 F.2d at 424; *United States v. Quiroz*, 449 F.2d 583, 584 (9th Cir. 1971);[15] and note 8 *supra*. *See also De-Pugh v. United States*, 393 F.2d 367, 370 (8th Cir.), *cert. denied*, 393 U.S. 832, 89 S.Ct. 101, 21 L.Ed.2d 102 (1968).

Defendant's alternative contention, that the grand jury "was entitled to be appraised of information regarding the dismissal" of the 1974 indictment so that it could choose not to return the subject indictment, also falls short of the mark. True, the grand jury has the "unchallengable power to shield . . . [and] give sanctuary to the guilty." *United State v. Cox*, 342 F.2d 167, 189–90 (5th Cir.) (Wisdom, J., concurring specially), *cert. denied sub nom., Cox v. Hauberg*, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965); *accord, United States v. Ciambrone, supra*, 601 F.2d at 627 (Friendly, J., dissenting). But the "shield" that the grand jury may choose to raise to "give sanctuary to the guilty" cannot be wielded by a defendant as a sword. Just as the target has no right to present his version to the grand jury, *United States v. Ciambrone, supra*, 601 F.2d at 622–23 (citations omitted), he likewise has no right to have evidence presented to the grand jury which might tend to paint him in a sympathetic light.

Our conclusion is reinforced by the defendant's testimony before the grand jury in which he informed them of the possibility that the underlying 1974 indictment would be dismissed. *See* discussion at 1169–1170, *supra*. Surely if the grand jurors had desired additional information on the status of the underlying indictment, they would have made the appropriate inquiry of the prosecuting attorney. (In which event, of course, the prosecutor properly could have advised the grand jury that the status of the underlying indictment is irrelevant, save for its status at the time of receipt of firearms). But there is no indication in this record that they did so. *See United States v. Ciambrone, supra*, 601 F.2d at 625, *citing United States v. Mandel*, 415 F.Supp. 1033, 1040 (D.Md.1976), *conviction rev'd on other grounds*, 591 F.2d 1347 (4th Cir.) *on rehearing, conviction aff'd by an equally divided court*, 602 F.2d 653 (4th Cir. 1979).

Accordingly, we reject defendant's argument that the subject indictment should be dismissed because the prosecutor did not inform the grand jury of the dismissal or potential dismissal of the underlying 1974 indictment.

### c. Fundamental Fairness

Defendant's third theory in support of his motion is that dismissal of the under-

---

its facts. Finally, *DeMarco* is also inapposite because "the disclosure [it] required of the prosecutor went directly to the power of the grand jury to act at all." *United States v. Mandel*, 415 F.Supp. 1033, 1041 (D.Md.1976), *conviction rev'd on other grounds*, 591 F.2d 1347 (4th Cir.), *on rehearing, conviction aff'd by an equally divided court*, 602 F.2d 653 (4th Cir. 1979).

14. *See United States v. Craven, supra*, 478 F.2d at 1336–37.

15. Defendant also attempts to factually distinguish those Circuit cases cited in the text. He urges that, unlike *Brown* or *Quiroz*, the underlying 1974 indictment against him was dismissed prior to the return of the subject indictment.

Defendant's distinction is of no legal consequence. Although the cases cited in the text concerned different firearms prohibitions than the one before the Court, they are nonetheless valid precedent in this action. *See* note 8 *supra*.

lying 1974 indictment prior to return of the subject indictment makes it fundamentally unfair to permit trial of the subject indictment.

This argument necessitates only a brief response. Again, we reiterate our holding that the alleged violations of 18 U.S.C. § 922(h)(1) were complete, if at all, upon the defendant's receipt of the firearms in question. *See United States v. Brown, supra,* 484 F.2d at 424; *United States v. Quiroz, supra,* 449 F.2d at 584; and note 8 *supra.* We therefore find no fundamental unfairness in the prosecution of the offenses alleged in the subject indictment.

Defendant's argument that prosecution of this indictment is so fundamentally unfair as to warrant our quashing the indictment is without merit.

d. *Violation of Rules 6(d), 6(e), Federal Rules of Criminal Procedure*

■ Finally, defendant urges that the indictment be dismissed because the presence of the two Government Agents in the prosecutor's office during the preliminary screening of Weingartner's tape recordings violated the secrecy of the grand jury. *See* discussion at 1169–1170, *supra.*

Defendant's well-intentioned and creative argument is, however, a little strained. Rule 6(d), F.R.Crim.P., in relevant part, provides:

> "Attorneys for the government, the witness under examination, . . . and for the purpose of taking evidence, a stenographer or operator of a recording device may be present *while the grand jury is in session* . . . ."

(Emphasis supplied.) In the plainest of language, the Rule is applicable only if "the grand jury is in session". *Id.*

The August 21, 1979 meeting at the prosecutor's office, however, did not even remotely resemble a grand jury session. Defendant was not under oath. No grand juror apparently was present. A record of this meeting could not have been incorporated in the record before the grand jury because apparently no stenographic record of it was made. Both the foreman and the

prosecuting attorney clearly informed defendant that the purpose of the meeting was to preliminarily screen the audibility and relevancy of Weingartner's tapes. Defendant's accompaniment by a person not his lawyer, and that person's apparent presence during the meeting, further undermines his contention that the August 21 meeting was a session of the grand jury. *See United States v. International Paper Co.,* 457 F.Supp. 571, 574–75 (S.D.Tex.1978).

The legal precedent for the strained reading of Rule 6(d) defendant would have us adopt is also a little thin. He relies almost exclusively on *United States v. Phillips Petroleum Co.,* 435 F.Supp. 610 (N.D.Okl. 1977). The dissimilarities between the facts of *Phillips* and those at bar are, however, readily apparent. In *Phillips,* rather than have a witness before the grand jury finish his testimony the following day, the prosecutor instead placed the witness under oath in his office and proceeded to take his testimony. This occurred while the grand jury was in recess. Significantly, the prosecutor indicated for the record that the testimony of the witness would be made part of the grand jury record. Only these unique circumstances led the district court to conclude that Rule 6(d) had been violated. *Id.* at 618. Yet, its conclusion even in those unique circumstances has been questioned. *See United States v. International Paper Co., supra,* 457 F.Supp. at 575.

Defendant's argument also fails to acknowledge the role the prosecutor may properly play in assisting the grand jury in its investigation. For example, the prosecutor is authorized to issue process of the grand jury on his own initiative. F.R. Crim.P. 17(a). Without unduly interfering with the independence of the grand jury, "the prosecutor may, and even should, take an active role in organizing the presentation of witnesses and documents before the grand jury to avoid needless repetition of evidence and to conserve the time of the grand jurors", *United States v. Mandel,* 415 F.Supp. 1033, 1040 (D.Md.1976), *conviction rev'd on other grounds,* 591 F.2d 1347 (4th Cir.), *on rehearing, conviction aff'd by*

*equally divided court,* 602 F.2d 663 (4th Cir. 1979). *See also United States v. Miller,* 508 F.2d 588, 594 (5th Cir. 1975) (dissenting from denial of rehearing).

Finally, while it is true that the grand jury's foreman directed that defendant play his tapes to "Mr. Weir and Mr. Robins", (the prosecuting attorneys,) the presence of the two Government Agents at the prosecutors' office did not violate Rule 6(e), F.R. Crim.P. A sealed Order of this Court, submitted *in camera* by the Government, authorizes the disclosure of evidence presented to the grand jury to these two Special Agents, in order that they could assist in the investigation. *See* Rule 6(e), F.R. Crim.P. Both the grand jury and the prosecutors were entitled to the assistance of these two Government Agents, supposedly parties to some of the recorded conversations, in determining the authenticity of Weingartner's tape recordings.

In summary, the Court finds that the presence of the two Government Agents at the prosecutors' office during Weingartner's playing of his tape recordings did not violate Rules 6(d), 6(e) of the Federal Rules of Criminal Procedure. The disclosure of the contents of the defendant's tape recordings to these two Government Agents was entirely proper under the circumstances.

\* \* \* \* \* \*

Accordingly, for all of the foregoing reasons, the Court concludes that defendant's motion to dismiss Indictment No. 79–332 should be denied.

## II. SUPPRESSION MOTION AND APPLICATION FOR A *FRANKS* HEARING

Our attention now turns to defendant's suppression motion and his application for a *Franks* hearing on the veracity of the contents of the search warrant affidavit. Because each of the four search warrants in question was based on the same search warrant affidavit,[16] the magistrate's findings of probable cause can in general be collectively reviewed.

### a. *Suppression Motion*

On July 12, 1978, the magistrate found probable cause to issue four warrants authorizing searches respectively of defendant Weingartner's person, home, office and automobile. The objects of these search warrants were evidence, fruits or instrumentalities of a variety of alleged offenses, including, *inter alia,* contraband firearms, stolen property, conspiracy to violate various federal firearms statutes, and conspiracy to engage in an enterprise through a pattern of racketeering (18 U.S.C. § 1962). The finding of probable cause was based upon a 17-page search warrant affidavit propounded jointly by the two aforementioned Government Agents, Special Agent Bopp of the Bureau of Alcohol, Tobacco and Firearms, and Special Agent Luksic of the United States Customs Service. Both affiants related, in the main, their first-hand observations garnered during their separate year-long undercover investigations.

Seeking to suppress as evidence the items seized from Weingartner's home, office, car and person, defendant urges that we upset the magistrate's finding of probable cause. In contrast with his numerous other contentions, however, defendant fails to cite any authority in support of his position nor does he discuss any specifics of the affidavit. His failure to do so is perhaps the result of the affidavit's specific detailing of ten separate illegal incidents involving this defendant. Gov't Br., App., Search Warrant Aff., pp. 15–16.

■ Our review of the finding of probable cause, of course, is in this setting limited to a consideration of the four corners of the search warrant affidavit presented to the magistrate. *E. g., Aguilar v. Texas,* 378 U.S. 108, 109 n. 1, 114, 84 S.Ct. 1509, 1511 n. 1, 1514, 12 L.Ed.2d 723 (1964); *United States v. Casino,* 286 F. 976 (S.D.N.Y.1923) (per L. Hand, J.). We conclude that this search warrant affidavit demonstrated the

---

16. Copies of the search warrant affidavit and the four warrants are contained in the Appendix to the Government's Brief.

requisite probable cause to search defendant's office, home, car and person.

Probable cause to search defendant's office is established because most of defendant's incriminatory statements and acts occurred there. Similarly, defendant's statement to Agent Luksic that defendant kept a firearm in his home demonstrates probable cause to search Weingartner's residence. Gov't Br., App., Search Warrant Aff., p. 10. It is a commonsense inference that a suspect reasonably believed to be involved in the offenses enumerated in the warrant affidavit probably concealed some evidence of these offenses in his home and car, and on his person. In addition, the nature of the stolen property allegedly involved, *e. g.*, clothing and stereo equipment, buttresses the inference that such property would likely be kept in one's residence. *See id.*, Search Warrant Aff., pp. 3–4. "Admittedly there are other places where the guns *might* have been stored; yet, we believe these facts and circumstances gave the magistrate probable cause to believe the weapons would be found as a result of the search of [Weingartner's] residence." *United States v. Rahn*, 511 F.2d 290, 294 (10th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975). Given the "commonsense" manner in which the search warrant affidavit must be viewed, *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), this warrant affidavit, read in its entirety, supports the magistrate's conclusion that evidence, fruits or instrumentalities of the offenses related in the affidavit would likely be found in defendant's residence.

■ We are equally untroubled by defendant's implicit contention that the affidavit was grounded upon stale instead of timely information. Although it is a "manifest" requirement of the Fourth Amendment that probable cause be present at the time of the issuance of the search warrant, *Sgro v. United States*, 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932), timeliness is measured by the nature and regularity of the alleged unlawful activities:

"Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant."

*United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972), *quoted in United States v. Harris*, 482 F.2d 1115, 1119 (3d Cir. 1973).

The search warrant affidavit in question relates facts indicative of on-going violations of the applicable federal statutes over a year-long period. Even more importantly, the magistrate could independently discern from the affidavit that "there was no reason to believe that this operation had ceased." *United States v. Forsythe*, 560 F.2d 1127, 1132 (3d Cir. 1977).

Probable cause of course concerns probabilities, not absolute or near certainties. In these circumstances, probable cause means evidence as would persuade a man of reasonable caution to conclude that offenses had been or were being committed and that evidence of assistance in securing the apprehension or conviction of the perpetrator(s) would likely be found in the places to be searched. *See Warden v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967); *United States v. Ventresca, supra*, 380 U.S. at 109, 85 S.Ct. at 746, *quoting Locke v. United States*, 11 U.S. (7 Cranch.) 339, 348, 3 L.Ed. 364 (1813); *United States v. McNally*, 473 F.2d 934, 937 (3d Cir. 1973). *See also* Rule 41(b), F.R.Crim.P.

Our Constitutional preference for the use of search warrants, thereby ensuring an independent determination of probable cause by a neutral and detached magistrate, finds expression in the considerable deference accorded the magistrate's finding of probable cause. *E. g., United States v. Ventresca, supra*, 380 U.S. at 109, 85 S.Ct. at 746; *Jones v. United States*, 362 U.S. 257, 270–71, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *United States v. Middleton*, 599 F.2d 1349, 1356 n. 7 (5th Cir. 1979); *United States v. McNally, supra*, 473 F.2d at 937.

"[M]agistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense." *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 591, 21 L.Ed.2d 637 (1969). Hence, even doubtful cases are to be resolved largely by the preference for search warrants. *United States v. Ventresca, supra,* 380 U.S. at 109, 85 S.Ct. at 746.

Our review of the facts related in the search warrant affidavit leads us to conclude that each of the four warrants in question was founded upon the requisite probable cause. Fairly read, the affidavit indicates facts from which the magistrate could reasonably conclude that the bar in which defendant maintained his office was a hub of stolen property and illegal firearms transactions and a racketeering conspiracy.

For the foregoing reasons, defendant's motion to suppress evidence seized from defendant's office, home, car and person pursuant to the four search warrants shall be denied.

b. *Application for a Franks Hearing*

The Court now turns to consideration of defendant's contention that he is entitled to a hearing on the veracity of the search warrant affidavit propounded by Agents Bopp and Luksic which served as the basis for the issuance of the four search warrants in question. In support of his contention, defendant has submitted an affidavit in which he states that nearly all of the incriminating statements about this defendant in the warrant affidavit are at least partially incorrect.

In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court held that a defendant, upon the proper preliminary showing, is entitled to challenge the validity of a search warrant based on an affidavit containing deliberately or recklessly made falsehoods as to a material fact. Mr. Justice Blackmun's opinion for the Court specified the procedure we should follow: [17]

"There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause,

17. We also take defendant to contend that the Court should apply the criteria for a veracity hearing discussed but not adopted by the Third Circuit in *United States v. Armocida*, 515 F.2d 29, 41, *cert. denied sub nom., Gazal v. United States*, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975), *i. e.*, that a defendant is entitled to a hearing for any deliberate or reckless misrepresentation in the warrant affidavit, whether or not that misrepresentation is material to the finding of probable cause. Def. Suppression Br. at 3–4.

We decline defendant's invitation to extend the scope of *Franks* by reading it as the minimum the States must provide to comport with

the Due Process Clause of the Fourteenth Amendment. *Franks v. Delaware, supra,* concerned an appeal from the judgment of the Delaware Supreme Court. The thrust of the United States Supreme Court's opinion, however, is based on the Fourth Amendment. Hence, the tests enumerated therein are equally applicable in a federal criminal action. Inasmuch as the federal courts which have considered this issue in the past two years have generally applied the *Franks* test without a serious question, we shall follow suit. *See United States v. Young Buffalo*, 591 F.2d at 508–10 (9th Cir.), *cert. denied*, 441 U.S. 950, 99 S.Ct. 2178 (1979).

no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing."

*Franks v. Delaware, supra,* 438 U.S. at 171–72, 98 S.Ct. at 2685 (footnote omitted).

*Franks* thus established a two-stage procedure for determining the necessity of an evidentiary hearing on the veracity of a warrant affidavit. First, the defendant must make a "substantial preliminary showing", accompanied by an offer of proof, of "allegations of deliberate falsehood or of reckless disregard for the truth". *Franks v. Delaware, supra,* 438 U.S. at 170, 171, 98 S.Ct. at 2685. *See United States v. Young Buffalo,* 591 F.2d 506, 509 (9th Cir.), *cert. denied,* 441 U.S. 950, 99 S.Ct. 2178, 60 L.Ed.2d 1055 (1979).

▮ The Court has carefully reviewed defendant's affidavit and brief in support of his request for a *Franks* hearing. We find, however, that defendant has failed to satisfy the first prong of the *Franks* test, *i. e.,* he has failed to make a "substantial preliminary showing" of deliberate falsehoods or recklessly made allegations in disregard of the truth contained in the warrant affidavit of Government Agents Bopp and Luksic.

With regard to the numerous stolen property transactions, Weingartner claims in the most conclusory terms that the items in question, *i. e.,* stolen clothing and stereo equipment, were either not stolen in fact or that the alleged sales never occurred. Thus, he contradicts the first-hand observation of the Agent to whom some of these sales were in fact made.

But the corroboration defendant proffers in support of his contention is virtually nonexistent. For instance, the warrant affidavit states that Weingartner sold Agent Luksic approximately 6,500 pieces of ladies' and childrens' apparel in the early part of May, 1978. Gov't Br., App., Search Warrant Aff., pp. 3–4. While Weingartner claims that the property was not stolen, he fails to proffer any proof that the Agent was told or shown that the sale was legitimate. Weingartner Affidavit in Support of Suppression Motion, p. 2. Instead, Weingartner merely states that he had presented a purported bill of sale for these garments to the grand jury. Weingartner Aff. at 2. Such presentation, however, as the Government points out, occurred more than one year after the alleged sales of the garments to Agent Luksic took place. Defendant also does not aver that he showed the Agent the purported bill of sale at the time of the alleged transaction.

The insufficiency of defendant's offer of proof thus lies in the absence of any credible evidence that the warrant affidavit contained deliberate falsehoods or statements made in reckless disregard of the *truth* as to information within the affiant's own knowledge. A hearing is permitted, if at all, "only [as to] the question of the affiant's representations as to his own activities." *Franks v. Delaware, supra,* 438 U.S. at 170, 98 S.Ct. at 2684. "Truth", in this context, means "a truthful factual showing of probable cause." *United States v. Young Buffalo, supra,* 591 F.2d at 511.

"This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is *'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true."*

*Franks v. Delaware, supra,* 438 U.S. at 165, 98 S.Ct. at 2681 (emphasis supplied), *quoted in United States v. Young Buffalo, supra,* 591 F.2d at 511. Defendant has failed to offer any proof that substantiates his contention that Agents Luksic and Bopp did not believe the facts related in their warrant affidavit to be true.

Defendant apparently believes that conclusory allegations of falsity as to nearly all the incriminating statements in the warrant affidavit is sufficient to meet the first prong of the *Franks* test. We do not agree.

Recognizing that in general the rights of the accused are amply protected at other states of a criminal proceeding, the United States Supreme Court held that a *Franks* hearing is required only, *inter alia*, if and when the defendant offers substantial and reliable proof questioning the truthfulness of the warrant affiant's representations as to his own activities, knowledge, beliefs and conclusions. *See Franks v. Delaware, supra*, 438 U.S. at 169–71, 98 S.Ct. at 2683–85. Defendant has failed to offer any proof from which one could infer that the Agent deliberately falsified his belief as to the nature of the allegedly illegal sales of ladies' and childrens' garments. Weingartner has offered no proof (nor any explanation of the absence of such proof) that Agent Luksic knew or should have known that the goods in question were legitimately in Weingartner's possession. "Allegations of negligence or innocent mistake are insufficient" to meet the first prong of the *Franks* test. *Franks v. Delaware, supra*, 438 U.S. at 171, 98 S.Ct. at 2685. Thus, even if Agent Luksic possessed information "creat[ing] a duty of further inquiry, these assertions at best raise the possibility of negli-

gence on his part." *United States v. Young Buffalo, supra*, 591 F.2d at 510. And Agent Luksic cannot be required or even expected to make further inquiries of the target of his undercover investigation.

In sum, defendant's affidavit and offer of proof falls far short of the "substantial preliminary showing" required by the *Franks* Court.[18] His application for a hearing on the veracity of the warrant affidavit shall be denied.

## III. BILL OF PARTICULARS

Our attention finally turns to defendant's requests for a bill of particulars, Rule 7(f), F.R.Crim.P.

In *United States v. Addonizio*, 451 F.2d 49 (3d Cir. 1971), *cert. denied*, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972), the court described the function served by a bill of particulars:

" 'The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect

18. The Government also urges that the Court find that, even if, *arguendo*, defendant's offer of proof is sufficient to meet the first prong of the *Franks* test, there remains within the warrant affidavit two uncontested incidents which standing alone are sufficient to establish probable cause. We agree.

First, Weingartner does not dispute that he had displayed to Agent Bopp in his office an Army-type .45 calibre pistol which had been converted to a .22 calibre pistol. Neither does defendant dispute that he told Agent Bopp that the police would like to catch defendant with such a weapon. *Compare* Gov't Br., App., Search Warrant Aff., p. 9, *with* Weingartner Affidavit in Support of Suppression Motion, pp. 2–3. The receipt of this particular weapon is the subject of Count III of the subject indictment.

Second, Weingartner does not dispute statements in the warrant affidavit that describe the defendant as an aider and abetter of two illegal sales of ammunition to Agent Bopp by "Brother". Gov't Br., App., Search Warrant Affidavit, p. 10.

Thus, even if, *arguendo*, we found that defendant had satisfied the requirement of a substantial preliminary showing we would conclude that an evidentiary hearing was nevertheless not required. The two uncontested por-

tions of the warrant affidavit discussed above are alone sufficient to support a finding of probable cause. The warrant affidavit indicates that Weingartner was under indictment at the time of the search. *Id.* at 10. Weingartner's statement to Agent Bopp relating to his possession of the converted .22 calibre pistol raises the inference that defendant was conscious of his guilt. Furthermore, Weingartner's statement to Agent Bopp that he had a constant source of ammunition, taken together with "Brother's" subsequent illegal sale of ammunition to Agent Bopp, is an indication that evidence of prior illegal firearms transaction might be found in Weingartner's office. Recall that section 922(h)(1) also prohibits the receipt of ammunition (even if possession thereof is not a violation of State law). Weingartner's statement to Bopp that he kept a gun in his home buttresses the presence of probable cause to search defendant's residence.

These uncontested facts, when taken together with reasonable commonsense inferences therefrom, are alone sufficient to support the finding of probable cause to search defendant's home, office, car and person. Therefore, a *Franks* hearing is not required even if the first prong requirement were met. *Franks v. Delaware, supra*, 438 U.S. at 172, 98 S.Ct. at 2685.

him against a second prosecution for an inadequately described offense.' *United States v. Tucker*, 262 F.Supp. 305, 308 (S.D.N.Y.1966). A bill of particulars should fulfill this function 'when the indictment itself is too vague and indefinite for such purposes.' *United States v. Haskins*, 345 F.2d 111, 114 (6th Cir. 1965). *Accord, Wyatt v. United States*, 388 F.2d 395, 397 (10th Cir. 1968)."

*Id.* at 63–64. *See also* 8 Moore's Federal Practice ¶ 7.06[2] (2d ed. 1979). "Within this general framework, the granting of a Bill of Particulars lies solely within the Court's discretion." *United States v. Greater Syracuse Bd. of Realtors*, 438 F.Supp. 376, 379 (N.D.N.Y.1977), *citing, inter alia, Wong Tai v. United States*, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927). *Accord, United States v. Addonizio, supra*, 451 F.2d at 64 ("In the final analysis then, the granting of a bill of particulars remains a discretionary matter with the trial court . . .").

*Addonizio* implies that the district court's assessment of a request for a bill of particulars begins with a careful examination of the subject indictment. Count I of the instant indictment provides as follows:

"That in or about December, 1977, in the District of New Jersey, the defendant GEORGE C. WEINGARTNER having been indicted on August 6, 1974 in the United States District Court for the District of New Jersey, for crimes punishable by imprisonment for terms exceeding one year, that is, conspiracy, obstruction of justice and unlawfully mailing and carrying in interstate commerce an electronic device, in violation of Title 18, United States Code, Sections 371, 1503 and 2512(1)(a), respectively, and with

knowledge thereof, unlawfully did receive a firearm, that is a Sturm Ruger revolver, Model Super Black Hawk, caliber .44 magnum, serial number 81–78877, which had been shipped and transported in interstate commerce.

In violation of Title 18, United States Code, Sections 922(h)(1) and 924(a).

Counts II and III of the instant indictment are similarly drawn.[19]

Defendant's requests principally[20] seek information concerning the Government's decision-making process in moving for dismissal of the 1974 indictment and that of a related case, Criminal No. 74–314 (which was also dismissed pursuant to Rule 48(a), F.R.Crim.P.). For example, Request 8 states:

"State on what date the United States Attorney's Office began discussions on the issue of dismissal on [*sic*] Indictment Criminal No. 74–313 against (a) George Weingartner; (b) Charles Sackerman; (c) Richard Sirchie; (d) Vincent Verdamo."

Similar in scope is Request 9, which asks that the Government:

"State the dates of all communications between the United States Attorney's Office and the Department of Justice with respect to the potential dismissal of Criminal No. 74–313 with respect to each and every individual named in sub-parts contained in question no. 8, above."

For the following reasons, the Court denies defendant's requests for a bill of particulars *in toto*. First, the subject indictment is not unduly vague. It alleges the approximate dates and precise firearms allegedly illegally received by Weingartner. It also alleges with specificity the underlying 1974 indictment and defendant's knowl-

---

**19.** Count III of the subject indictment is even more specific than Counts I and II insofar as it alleges that the offense occurred "on or about June 16, 1978".

**20.** Request 13 seeks the dates on which the Government moved to dismiss the 1974 indictment against each of the co-defendants. Request 14 seeks the dates of each Order of dismissal and the name of each judge signing such Order.

The Court declines to authorize either Request 13 or 14. Both Requests seek information which can be ascertained from available public records, *e. g.*, the docket sheet of Criminal No. 74–313. Such information is not the proper subject of a bill of particular. *See United States v. Ball*, 49 F.R.D. 153, 156 (E.D.Wis. 1969); *cf. United States v. Curry*, 278 F.Supp. 508, 541 (N.D.Ill.1958).

edge thereof. In sum, each of the three counts of the subject indictment provides defendant with more than sufficient notice of the nature of the charges so as to enable him to adequately prepare his defense and avoid double jeopardy. *Cf. United States v. Addonizio, supra,* 451 F.2d at 63–64.

Second, information regarding the Government's decisions to dismiss the 1974 indictment against Weingartner's co-defendants is irrelevant to the subject indictment against this defendant. Such information will neither further inform defendant of the nature of these charges nor enable him to avoid double jeopardy.

Third, with respect to defendant's requests for information concerning dismissal of the 1974 indictment against him, the Court will not grant leave to circumvent the discovery limitations embodied in Rule 16, F.R.Crim.P.

Finally, and perhaps most significantly, the dismissal of the 1974 indictment is neither material to nor exculpatory of the charges alleged in the subject indictment. As earlier stated, the section 922(h)(1) offense is complete upon the receipt of firearms, *inter alia,* by a person then under the requisite indictment. *See* Part II, c., d., *supra.*

In summary, defendant's requests for a bill of particulars should be denied in all respects.

### CONCLUSION

For all of the foregoing reasons, the Court concludes that defendant Weingartner's motions: (a) to dismiss this indictment; (b) for a hearing on the veracity of the search warrant affidavit and for suppression of evidence seized pursuant to various warrants based on that affidavit; and (c) requesting a bill of particulars; shall each be denied in all respects. The Government is requested to submit to Chambers an Order effectuating this Opinion within 10 days of this date.

The parties are hereby given notice that the trial of this action shall commence March 17, 1980, at 10:00 a. m. in the forenoon.